INDIANA & MICHIGAN ELECTRIC COMPANY *v.* REVIEW BOARD OF THE INDIANA EMPLOYMENT SECURITY DIVISION, WILLIAM H. SKINNER AND JAMES M. ORGAN, AS MEMBERS OF AND CONSTITUTING A QUORUM OF THE REVIEW BOARD OF THE INDIANA EMPLOYMENT SECURITY DIVISION AND RICHARD E. CLOUSE.

[No. 2-273A29. Filed September 19, 1974. Rehearing denied November 12, 1974.]

*Warren A. Deahl, Thornburg, McGill, Deahl, Harman, Carey & Murray,* of South Bend, for appellant.

*Theodore L. Sendak,* Attorney General, *Darrel K. Diamond,* Deputy Attorney General, for appellees.

WHITE, J.—The only question before the Board in this case (stated in non-technical terms) was whether a laid off employee can draw both unemployment compensation benefits and layoff allowance plan payments in the same week. The laid off employee's eligibility for unemployment benefits is

not questioned.[1] The issue before the Board was whether the employer's layoff allowance plan payments are "deductible income" under the Employment Security Act or are "payments . . . under a private unemployment benefit plan financed . . . by employer."[2] If they are "deductible income" they preclude benefits under the Act, since they exceed such benefits.

The Review Board concluded that the layoff allowance payments are deductible income. We hold that its conclusion is not sustained by the facts found by the Board, and therefore reverse.

The pertinent provisions of the Act, relating to "deductible income", as found in Indiana Annotated Statutes, Burns Code Edition, published in 1974, are the following:

> "22-4-15-4 [52-1539d]. Income received from other sources.—An individual shall be ineligible for waiting period or benefit rights: For any week with respect to which the individual receives, is receiving, or has received payments equal to or exceeding his weekly benefit amount in the form of: (a) deductible income as defined and applied in IC 1971, 22-4-5-1 and 22-4-5-2 hereof; . . . ."

> \* \* \*

> "22-4-5-1 [52-1529]. 'Deductible income' defined—Exclusions.—'Deductible income' wherever used in this act [22-4-1-1—22-4-38-3], means income deductible from the weekly benefit amount of an individual in any week, and shall include, but shall not be limited to remuneration for services from employing units, whether or not such remuneration is subject to contribution under this act, dismissal pay; vacation pay; pay for idle time; holiday pay; sick pay; traveling expenses granted to an individual by an employing unit and not fully accounted for by such individual; earnings from self-employment; bonuses, gifts or prizes awarded to an employee by an employing unit; payments in lieu of compensation for services; . . . ."

---

1. Thrice in its "Findings and Conclusions", the Board specially found that claimant was "laid off" on June 12, 1972. The evidence shows, but the Board did not find, that the layoff was the result of a reduction in force.

2. Ind. Ann. Stat. § 22-4-15-8 (Burns Code Ed., 1974), quoted in full *post*, p. 550.

"22-4-5-2 [52-1529a]. Items constituting deductible income in respect to week paid.—Bonuses, gifts, prizes, or payments in lieu of a vacation awarded to an employee by an employing unit shall be considered as deductible income in and with respect to the week in which the same is actually paid. The payment of accrued vacation pay, dismissal pay, or severance pay to an individual separated from employment by an employing unit shall be allocated to the period of time for which such payment is made immediately following the date of separation and an individual receiving such payments shall not be deemed unemployed with respect to weeks during which such allocated deductible income equals or exceeds the weekly benefit amount of his claim. Pay for idle time; sick pay; traveling expenses granted to an individual by an employing unit and not fully accounted for by such individual; earnings from self-employment: . . . shall be deemed to constitute deductible income with respect to the week or weeks for which such payments are made. . . ."

It is *tacitly* conceded by appellant that these statutes can be interpreted as bringing the "lay off allowance plan payments" into the category of "deductible income" (e.g., "pay for idle time"). However, appellant relies on a 1959 amendment of a section added to the act in 1957 to except these payments from the "deductible income" classification. Prior to its 1959 amendment that section (Acts 1957, Ch. 129, § 2) read:

"Benefits which are paid or payable for any week in accordance with the provisions of this act shall be reduced by the amount of any payment or payments the claimant receives, has received, will receive or accrues rights to receive with respect to or based upon such week under a private unemployment pay plan financed in whole or in part by his employer or former employer. When entitlement to such payment or payments under a private plan for any week is contingent upon the prior receipt of the benefit payment for such week under the provisions of this act, the overpayment created thereby shall be subject to recoupment under subsection (b) and (e) of Section 1301 [Ind. Ann. Stat. § 22-4-13-1 (Burns Code Ed., 1974)] of this act. Otherwise any overpayment created under the provisions of this section may be recouped under the applicable provisions of Section 1301.

"Provided, however, this section shall not apply to withdrawal of funds by claimants from private security benefit plans which provide for individual trust fund accounts for each employee, the employer deposits into which vest in the employee without right of revocation by the employer, that may be drawn upon by such employee when unemployed for any reason, and whereunder the entire balance of such individual's trust fund account will be paid to him upon termination of his employment for any reason or to his beneficiary or estate upon death. Employers' deposits to such trust fund accounts will be considered for the purpose of computing such employers' liability for contributions under this Act, remuneration paid for personal services when deposited into each account."

Appellant does not contend that the proviso of this 1957 version of this section of the Act would be sufficient to save the layoff allowance payments here involved from the recoupment provisions of the first paragraph of the section. On the contrary, appellant relies on the 1959 rewriting of this section, which it characterizes as having "swept away the technicalities of the old section." This quite substantial 1959 revision is now Ind. Ann. Stat. § 22-4-15-8 (Burns Code Ed., 1974), which reads:

"22-4-15-8 [52-1539h]. Benefits received from private plans excepted.—Notwithstanding any other provisions of this act [22-4-1-1—22-4-38-3], benefits otherwise payable for any week under this act shall not be denied or reduced on account of any payment or payments the claimant receives, has received, will receive or accrues right to receive with respect to or based upon such week under a private unemployment benefit plan financed in whole or part by his employer or former employer. No claim for repayment of benefits and no deduction from benefits otherwise payable under this act shall be made under the provisions of subsections (b) and (c) of section 1301 of this act because of payments which have been or will be made under such private unemployment benefit plans. [Acts 1947, ch. 208, § 1509, as added by Acts 1957, ch. 129, § 2, p. 226; 1959, ch. 241, § 1, p. 575.]

The Attorney General's brief on behalf of the appellee Review Board agrees that the question here is whether the layoff allowance plan "is a private unemployment benefit plan

within the scope of" the last above quoted § 22-4-15-8. But both the appellees' and the appellant's briefs go outside the facts found by the Board in support of their arguments, pro and con, whether the plan fits the provisions of § 22-4-15-8.

Although the Board's decision comprises nearly three pages of single-spaced typing it contains no express reason, nor findings of fact which clearly implies its reason, for its conclusion that "claimant received benefits under the employer's layoff allowance plan which constitute deductible income". But both the decision and the appellees' brief give the impression that the Board believed that what claimant received under the layoff allowance plan was actually "sick pay", which is expressly made "deductible income" by §§ 22-4-5-1 and 22-4-5-2, quoted above. That impression is fostered by the Board's finding that

". . . the employer's layoff allowance plan becomes available when one has been regularly full-time employed at the time of his layoff and it is calculated upon the individual's unused sick pay. . . ."

But the validity of that reason, if indeed it is the Board's reason, is weakened by the absence of any finding that claimant was sick at the time of his layoff or during the weeks for which the payments were made.

Neither the decision of the Board to the effect that claimant "is not entitled to waiting period credit for w/e [i.e., week ending] 6/17/72 or to benefits for w/e 6/24/72,"[3] nor its conclusion "that claimant received benefits under the employer's layoff allowance plan which constitute deductible income within the meaning of Chapter 15-4 of the Act", are sustained by the facts found and must therefore be reversed. Likewise, the facts found are insufficient to enable us to say, as a matter of law, that the payments made to claimant under

---

3. The quoted words are from the deputy's initial determination. The Board's *express* decision is merely: "The decision of the referee is hereby affirmed. . . ." The referee's decision is: "The initial determination of the deputy . . . is affirmed."

the employer's layoff allowance plan are, or are not, deductible income.

The decision of the Review Board is reversed and the case is remanded for further proceedings not inconsistent with the views expressed herein.

Reversed and remanded.

Sullivan, P.J., and Buchanan, J., concur.

NOTE.—Reported at 316 N.E.2d 448.